IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSEPH D. BLACK, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. DKC-22-3315 |
| SHAWN ELLIOTT, NICHOLAS ENYIOMA, and WARDEN THOMAS WOLFE, | * * | |
| Defendants. | * | |

***

**MEMORANDUM OPINION**

Self-represented plaintiff Joseph D. Black, an inmate presently incarcerated at Chesapeake Detention Facility ("CDF") in Baltimore, Maryland, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983 against defendants Shawn Elliott and Nicholas Enyioma, corrections officers at the Baltimore Central Booking and Intake Center ("BCBIC"),[1] and Warden Thomas Wolfe of CDF.  ECF No. 1.  In the complaint, Mr. Black alleges that Officers Elliott and Enyioma subjected him to excessive force in violation of his due process rights under the Fourteenth Amendment to the United States Constitution.  *Id*. at 2-3.  He further alleges that an unnamed officer at CDF failed to protect him from an assault by other inmates and that the conditions in his cell are unconstitutionally poor and violate the Americans with Disabilities Act.  *Id*. at 3-4.  Mr. Black seeks monetary damages.  *Id*. at 4.

Defendants filed a motion to dismiss or, in the alternative, for summary judgment.  ECF No. 17.  The court informed Mr. Black pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.

---

[1]  The Clerk shall be directed to amend the docket to reflect the correct names of Defendants Shawn Elliott and Nicholas Enyioma.  *See* ECF No. 17.


1975), that the failure to file a response in opposition to the motion could result in the dismissal of the complaint. ECF No. 19. To date, Mr. Black has not filed a response.

Having reviewed the submitted materials, the court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the motion will be construed as one for summary judgment and granted as to defendants Elliott and Enyioma. As to defendant Wolfe, the motion will be construed as a motion to dismiss and granted.

## BACKGROUND

### I. Plaintiff's Allegations

Mr. Black alleges that on September 15, 2022, he was advised that he was to be transferred from BCBIC to CDF. ECF No. 1 at 2. He asked Officer Elliott to call a lieutenant so that he could speak to them about the transfer, including that he was told that he would not be permitted to bring his commissary when transferred. *Id*. Major Enyioma responded, and Mr. Black explained that he wanted to bring his commissary items with him and that he had seen other inmates bring commissary items when transferred. *Id*. at 2-3. He was then placed in handcuffs and Officer Elliott "started to push [him] really hard to walk off." *Id*. at 3. Mr. Black told Officer Elliott that he was walking, and in handcuffs, so there was no need to push him so hard. *Id*. Mr. Black alleges that Major Enyioma then "pulled his can of pepper spray, placed it to my face then sprayed. Once then as I was going down sprayed a second time." *Id*.

After being transferred to CDF from BCBIC the same day, Mr. Black alleges that he asked an unnamed officer for a Request for Administrative Remedy ("ARP") form. ECF No. 1 at 3. He was told to move away from the window without being given the form. *Id*. Mr. Black then asked to speak to a lieutenant, but he and the officer "got into it so I went to my cell locked in then ten

seconds later my cell door came open five dudes came in beat me half to death." *Id*. at 4. After the assault, the cell door was reopened by the same officer and the inmates left. *Id*. at 5.

Mr. Black further alleges that the living conditions at CDF are "extremely harsh," that there is a "lack of accommodations for people with disabilities and mental health problem[s]," and there are infirmary delays and delays in "people being transferred back to state jails." *Id*.

Mr. Black requests monetary damages in the amount of $250,000 for his pain and suffering. ECF No. 1 at 5.

## II.     Defendants' Response

In support of their motion to dismiss, or in the alternative, for summary judgment, each defendant submitted a declaration describing the events and how they were involved. ECF Nos. 17-2 (decl. of Shawn Elliott), 17-3 (decl. of Nicholas Enyioma), and 17-4 (decl. of Thomas Wolfe).

Defendant Shawn Elliott declares that he works as a Correctional Officer II at BCBIC. ECF No. 17-2. On September 15, 2022, he arrived at Mr. Black's cell to transport him to segregation and learned that Mr. Black refused to pack up his property for transfer to CDF. *Id*. Specifically, Mr. Black was concerned about taking his commissary items with him to CDF. *Id*. Officer Elliott explained to Mr. Black that he could not take his commissary with him because he was being transferred to CDF for "punitive reasons." *Id*. He informed Mr. Black that he could not refuse the transfer and ordered him to get dressed, which Mr. Black refused. *Id*. at 2. Officer Elliott then placed Mr. Black in handcuffs "for being non-compliant" and escorted him to the lobby area to wait for the elevator. *Id*. Officer Elliot declares that "[w]hile waiting for the elevator Mr. Black became agitated and started pulling away from me in an aggressive manner. At the same time, he was loudly shouting 'PREA' towards other detainees who were in the 4 North courtroom, while hearings were being conducted." *Id*. Officer Elliott states that "[a]s Mr. Black became more

3

agitated I also feared for my and others safety because Mr. Black was pulling away from me . . . Major Enyioma immediately gave Mr. Black a direct order to stop, but Mr. Black continued his aggressive and disruptive behavior. This is when Major Nicholas Enyioma gave Mr. Black one burst of pepper spray." Mr. Black was then taken to medical before being transferred to CDF. *Id*.

Defendant Nicholas Enyioma declares that he is a Major assigned at BCBIC. ECF No. 17-3. On September 15, 2022, he went to Mr. Black's cell because Mr. Black refused to pack up his property for transfer to CDF. *Id*. When he arrived at Mr. Black's cell, Officer Elliott told him that Mr. Black was refusing to be transferred without his commissary items. *Id*. Major Enyioma explained that CDF will not allow him to bring his commissary and he ordered Mr. Black to pack his property. *Id*. When Mr. Black still refused, he was put in handcuffs while staff packed his property. *Id*. Officer Elliott and Major Enyioma then escorted Mr. Black to the elevators. *Id*. at 2. While waiting for the elevators, Mr. Black became agitated and began aggressively pulling away from Officer Elliott. *Id*. at 2. Major Enyoima gave Mr. Black an order to stop, but he did not comply. He "then administered a one second pepper spray towards Mr. Black's face to regain control. Once the situation stabilized, Mr. Black was escorted to medical for an exam by a medical professional." *Id*.

Defendant Thomas Wolfe declares that he is the Warden at CDF. ECF No. 17-4. Warden Wolfe states that he has "never given nor authorized an order to specifically open the door to Mr. Joseph Black's cell during my tenure at CDF. This is because unlocking an individual's cell is generally something handled by subordinates." *Id*.

## STANDARDS OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief

4

above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

When the moving party styles its motion as a motion to dismiss or, in the alternative, motion for summary judgment, as is the case here, and attaches additional materials to their motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the court, and the court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir.

2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

**DISCUSSION**

Defendants seek dismissal, or alternatively, summary judgment because 1) Mr. Black failed to state a claim upon which relief can be granted; 2) defendants are entitled to Eleventh Amendment immunity as to any claims against them in their official capacities; 3) defendants are entitled to qualified immunity; and 4) defendants Officer Elliott and Major Enyioma did not use excessive force against Mr. Black in violation of the Fourteenth Amendment.[2]  ECF No. 17.

**I.      Eleventh Amendment Immunity**

Defendants argue that they are immune from suit in their official capacities pursuant to the Eleventh Amendment.  Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from citizen suits in federal court absent state consent or Congressional action.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself.  *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  The State of Maryland has not waived such immunity for claims brought pursuant to § 1983.  Accordingly, to the extent Mr. Black sues the defendants in their official capacities, they are immune from suit.

---

[2] Defendants' motion to dismiss, or in the alternative, for summary judgment refers to Mr. Black's complaint as an "amended complaint" filed on December 27, 2022.  ECF No. 17.  Mr. Black filed his complaint on December 27, 2022, and did not file an amended complaint.  ECF No. 1.  Therefore, defendants' characterization of the complaint as an amended complaint appears to be an inconsequential error.

## II.     Defendants Elliott and Enyioma

In his unverified complaint, Mr. Black alleges that Officer Elliott used excessive force against him when Officer Elliott pushed him while he was handcuffed as he was escorted from his cell to the elevator for transfer to CDF, and that Major Enyioma used excessive force when he deployed pepper spray.  ECF No. 1 at 2-3.  Mr. Black acknowledges that he had a disagreement with the officers because they did not permit him to bring his commissary items with him to CDF when other inmates were allowed to do so.  *Id*. at 2.

Because Mr. Black was a pretrial detainee at the time of the incident, his claims are properly considered under the Fourteenth Amendment's due process clause.  *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)) ("the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment[.]").  Further, the Fourteenth Amendment due process clause protects pretrial detainees from "governmental action" that is not "rationally related to a legitimate nonpunitive governmental purpose" or that is "excessive in relation to that purpose."  *Short v. Hartman*, 87 F.4th 593, 608-609 (4th Cir. 2023), *cert. denied*, No. 23-1097, 2024 WL 2883766 (U.S. June 10, 2024) citing *Kingsley*, 576 U.S. at 398 (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979) (internal quotation marks omitted).

To state a claim of excessive force in violation of his Fourteenth Amendment rights as a pre-trial detainee, Mr. Black may prevail upon evidence that "the use of force is deliberate – *i.e.*, purposeful or knowing." *Kingsley*, 576 U.S. at 395.  Mr. Black's claim need not detail a subjective element of his alleged assailant's subjective state of mind, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Id.* at 396-97.  Objective reasonableness turns on the "facts and circumstances of each particular case." *Id.* at 397

(quoting *Graham*, 490 U.S. at 396 (1989)).  To determine if the force used was reasonable, the following factors may be considered:  "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Kingsley*, 576 U.S. at 397.

Here, Defendants' uncontroverted declarations show that their actions were objectively reasonable.  Both Officer Elliott and Major Enyioma declare that Mr. Black refused to pack up his property and go willingly with them for transfer from BCBIC to CDF.  ECF Nos. 17-2 and 17-3.  Instead, Mr. Black had to be handcuffed by Officer Elliott, and staff had to pack his property for him.  ECF Nos. 17-2 at 2 and 17-3.  After leaving his cell handcuffed and waiting near the elevator, Mr. Black "became agitated and started pulling away from [Officer Elliott] in an aggressive manner."  ECF No. 17-2 at 2.  Additionally, Mr. Black was shouting loudly and becoming more agitated, which placed Officer Elliott in fear for his and others' safety and the noise was also interfering with ongoing proceedings in the nearby courtroom.  *Id*.  Major Enyioma, who also described Mr. Black as aggressive and agitated, gave him an order to stop.  ECF No. 17-3 at 2.  When Mr. Black continued to pull away from Officer Elliott notwithstanding Major Enyioma's order to stop, Major Enyioma "administered a one second pepper spray towards Mr. Black's face to regain control."  *Id*.  Mr. Black was then taken to medical.  *Id*.

Defendants' declarations demonstrate that Mr. Black was noncompliant from the beginning of the interaction and his behavior continued to escalate to include shouting and physically attempting to break free.  A one-second spray of pepper spray was a reasonable way in which to subdue Mr. Black, regain control, and prevent injury to Mr. Black, the officers, and

8

bystanders as well as protect the integrity of ongoing courtroom proceedings. Mr. Black was provided immediate medical attention, and he does not allege that he suffered any adverse consequences as a result of the pepper spray. Even viewing the record in the light most favorable to Mr. Black, the officers' actions were objectively reasonable, and they are entitled to summary judgment.

### III. Warden Thomas Wolfe

Mr. Black alleges that upon his arrival at CDF, he asked for an ARP form and was denied.[3] ECF No. 1 at 3. Because he and the officer "got into it," Mr. Black returned to his cell. He alleges that "ten seconds later my cell door came open five dudes came in beat me half to death. Then after they was done my cell door was then reopen by that same officer so the inmates could be let out." *Id*. at 3-4. Mr. Black does not name the officer who allegedly opened the door, nor does he provide any details about the alleged assault. His implication that the unnamed officer purposefully let the inmates in his cell to assault him is conclusory and does not state a claim. As to Warden Wolfe specifically, Mr. Black makes no allegations that he was personally involved in the incident.

Here, Mr. Black does not allege that Warden Wolfe was personally involved in the alleged assault on him by other inmates. There is no allegation that Warden Wolfe was aware that Mr. Black was at a risk of harm from other detainees and failed to take any action. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. It is

---

[3] To the extent that Mr. Black intends to claim that the denial of an ARP form is a constitutional violation, such a claim could be construed as one for denial of access to courts. However, the tools required for access to courts by *Bounds v. Smith*, 430 U.S. 817, 821 (1977) "are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). Impairment of other capacities to litigate are consequential to incarceration and are constitutional. *Id*. Therefore, Mr. Black has not stated a claim of denial of access to courts.

well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit).  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  Supervisory liability under § 1983 must be supported with evidence that:  (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  Mr. Black fails to state a claim of either personal involvement or supervisory liability against Warden Wolfe.  As such, the complaint will be dismissed as to all claims against him.[4]

---

[4] This court is mindful of its obligation liberally to construe the pleadings of self-represented litigants, such as the instant complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In evaluating such a complaint, the factual allegations are assumed to be true.  *Id.* at 93 (citing *Twombly*, 550 U.S. at 555-56).  Nonetheless, liberal construction does not mean that this court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim.  *See Weller v. Dep't of Soc. Serv*s., 901 F.2d 387 (4th Cir. 1990).  A pleading that offers labels and conclusions

## CONCLUSION

For the foregoing reasons, the Defendants' Motion will be GRANTED.  As to Officer Elliott and Major Enyoima, the motion is construed as one for summary judgment, and judgment will be entered in their favor.  As to Defendant Warden Wolfe, the motion is construed as a motion to dismiss, and the claims against him will be dismissed.

A separate order follows.

Date: August 1, 2024                                    /s/
                                      DEBORAH K. CHASANOW
                                      United States District Judge

---

or a formulaic recitation of the elements of a cause of action does not satisfy Rule 8's basic pleading requirements. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

To the extent that Mr. Black has stated a potentially viable claim against the unnamed officer for failing to protect him from the alleged assault by other inmates, the dismissal of the complaint against Warden Wolfe does not preclude him from filing suit against that officer.

To the extent that Mr. Black intended to state a constitutional claim regarding prison conditions or inadequate medical care claim or a claim under the Americans with Disabilities Act, his vague and conclusory statements are not sufficient to do so.  Mr. Black alleges that the prison conditions at CDF are "extremely harsh," that there is a "lack of accommodations for people with disabilities [and] mental health problem[s]," and there are infirmary delays. ECF No. 1 at 4.  He does not provide any detail as to what conditions he finds harsh or what, if any, accommodations or medical care he has been denied.  Therefore, any such claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).